UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

NOV 1 6 2004

ROBERT H. SHEMWELL, CLERK
BY _____
DEPUTY

---

CIVIL ACTION NO. CV02-1371-M

---

*NOURI E. HAKIM*

**Plaintiff**

**v.**

**CANNON AVENT GROUP, PLC, CANNON RUBBER
LIMITED, and AVENT AMERICA, INC.**

**Defendants**

---

**PLAINTIFF'S CLAIM CONSTRUCTION BRIEF PERTAINING
TO THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT
REGARDING UNITED STATES PATENT NO. 6,357,620**

---

**THE BOLES LAW FIRM**
Michael L. DuBos (Bar Roll #23944)
Post Office Box 2065
1818 Avenue of America
Monroe, LA 71207-2065
Telephone: 318.388.4050
Facsimile: 318.361.3394

**GODWIN GRUBER, LLP**
Eric W. Buether
Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, Texas 75270
Telephone: 214.939.4400
Facsimile: 214.760.7332

**TABLE OF CONTENTS**

                                                                                        PAGE

I.   BACKGROUND ...................................................... 1

II.  APPLICABLE LAW FOR CLAIM CONSTRUCTION ........................... 2

III. ARGUMENT ........................................................ 2

     A.    '620 PATENT CLAIM CONSTRUCTION ............................ 2

           1.    "Protruding Member" ................................ 3

                 a.    The Ordinary Meaning of the Term "Protruding Member"
                       as Understood by One of Ordinary Skill in the Art, Is a Member
                       That Extends from a Surface Through the Opening in the Valve
                       Member to Block the Passage of Liquid Through the Opening ........ 3

                 b.    Nothing in the Claim Language or Specification of the '931
                       Patent Indicates that the Protruding Member Must "Plug" the
                       Hole in the Opening in the Flexible Valve Member to Block
                       Fluid Flow through the Valve ................................ 4

                 c.    There Is No "Clear and Unmistakable" Statement in the
                       Prosecution History of the '620 Patent that the Protruding
                       Member "Plug" the Hole in the Opening in the Flexible
                       Valve Member to Block Fluid Flow through the Valve ............. 6

           2.    "Closed Position" .................................. 9

                 a.    The Claim Language Expressly Defines "Closed Position" .......... 9

                 b.    There Is No Support in the Claim Language, Specification
                       or Prosecution History for Defendants Proposed Construction
                       of the Valve Member as a Condition in which the Protruding
                       Member or "Post" Extends Through and "Plugs" the Opening
                       to "Create a Seal in a Male-to-Female Relationship." ............. 10

           3.    "Negative Pressure" ............................... 13

                 a.    The Ordinary Meaning of the Term "Negative Pressure" as
                       Understood by One of Ordinary Skill in the Art is Pressure

Below That of Surrounding Ambient Atmospheric Pressure  . . . . . . . . 13

b.    There is No Intrinsic or Extrinsic Evidence to Support
Defendants Proposed Construction of "Negative Pressure"
as a "Pressure Differential" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1.    "Base" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

a.    The Ordinary Meaning of the Term "Base" as Understood by
One of Ordinary Skill in the Art, is the Lowest Part or Bottom
of the Sealing Member to Which the Protruding Member Is
Attached and off of Which the Protruding Member Extends  . . . . . . . . 16

IV.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

-ii-

# TABLE OF AUTHORITIES

**PAGE**

## Federal Cases

*Amazon.com, Inc. v. BarnesandNoble.com, Inc.*
239 F.3d 1343 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*
340 F.3d 1298 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

*Biovail Labs., Inc. v. Torpharm, Inc.*
326 F. Supp. 2d 605 (E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Elkay Mfg. Comp. v. Ebco Mfg. Co.*
192 F.3d 973 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*
279 F.3d 1022 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gart v. Logitech, Inc.*
254 F.3d 1334 9Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Searfoss v. Pioneer Consol. Corp.*
374 F.3d 1142 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1


## Other

Merriam-Webster's Ninth New Collegiate Dictionary (1991) . . . . . . . . . . . . . . . . . . . . . . . . 4

The New Oxford American Dictionary (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

Random House Webster's Unabridged Dictionary (2nd Ed.) . . . . . . . . . . . . . . . . . . . . . 3, 16

Webster Illustrated Contemporary Dictionary -
New Standard Encyclopedia Edition (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 16

Plaintiff Nouri E. Hakim ("Hakim") files this '620 Patent Claim Construction Brief in support of his motion for summary judgment of infringement of the '620 patent and opposition to the motions for summary judgment of noninfringement and invalidity regarding the '620 patent filed by Defendants Cannon Avent Group, Plc, Cannon Rubber Limited, and Avent America, Inc., (the "Defendants") .

## I. BACKGROUND

Plaintiff Hakim is the inventor and owner of United States Patent No. 6,357,620 (the '620 patent"). The '620 patent is directed to an improved no-spill cup construction and valve assembly which provides an extremely secure seal against accidental liquid flow from the cup spout. '620 Patent Abstract.

Hakim contends that the Defendants have directly and indirectly infringed the '620 patent. Plaintiff Hakim has filed a motion for summary judgment of infringement of the '620. Defendants have filed a motion for summary judgment of noninfringement and invalidity of the '620 patent. It is well-established that there are two stages in the litigation of patent infringement cases. First, the court must determine the scope and meaning of those patent claims disputed by the parties. *Searfoss v. Pioneer Consol. Corp.*,374 F.3d 1142 (Fed. Cir. 2004). Second, the claims as construed by the court are compared limitation by limitation to the features of the allegedly infringing device to determine infringement, *id.*, or to any asserted prior art to determine invalidity. *Amazon.com, Inc., v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1351 (2001). *See also Biovail Labs., Inc. v. Torpharm, Inc.*, 326 F. Supp. 2d 605, 608 (E.D. Pa. 2004). Therefore, before addressing the issues of infringement and validity of the '620 patent, it is necessary to address the proper construction of the asserted claims of those patents.

1

## II. APPLICABLE LAW FOR CLAIM CONSTRUCTION

The applicable law regarding claim construction is set forth in detail in Plaintiff's `931 Claim

Construction Brief, and will not be repeated here.

## III. ARGUMENT

### A.    `620 PATENT CLAIM CONSTRUCTION

Hakim asserts that Defendants infringe claims 1-6, 11-15, and 20-24 of the `620 patent.

These claims have one or more terms that require interpretation by the Court.[1]

### `620 Patent Claim 1

Claim 1 of the `620 Patent provides as follows:

An apparatus for preventing spilling during drinking, said apparatus comprising:

a valve, said valve comprising a **protruding member** and a valve member, said valve member comprising an opening, said valve having a **closed position** and in an open position,

said closed position being a configuration in which said protruding member extends through said opening of said valve member to block the passage of liquid through said opening,

said valve further being movable into an open position in which said valve member is pulled away from said protruding member for the passage of liquid through said opening,

said valve moving from said closed position to said open position upon the application of **negative pressure** to said valve member.[2]

---

[1]  Plaintiff has filed a Consolidated Appendix of Exhibits in Support of Plaintiff's Opposition to Defendants' Motions for Summary Judgment and Plaintiff's Motion for Summary Judgment containing exhibits pertaining to all of the summary judgment pleadings filed by Plaintiff. Citations to exhibits in this Appendix will be as follows: Consolidated Appendix Ex. [Exhibit No.] at [page number of Appendix].

[2]  The claim language requiring construction is shown in bold typeface.

2

1.    "Protruding Member"

**Hakim's Proposed Claim Construction: The word "protruding member" means a member that extends from a surface through the opening in the valve member to block the passage of liquid through the opening.**

a.    **The Ordinary Meaning of the Term "Protruding Member" as Understood by One of Ordinary Skill in the Art, Is a Member That Extends from a Surface Through the Opening in the Valve Member to Block the Passage of Liquid Through the Opening**

The ordinary meaning of the claim term "protruding member" is evident from the claim language itself and the dictionary definition of the word "protruding." Dictionaries define "protrude" as "extend beyond or above a surface," THE NEW OXFORD AMERICAN DICTIONARY (2001). *See also* WEBSTER ILLUSTRATED CONTEMPORARY DICTIONARY - NEW STANDARD ENCYCLOPEDIA EDITION (1982) ("To push or thrust out; project outward"); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2nd Ed.) ("2. To thrust forward; cause to project."). Consolidated Appendix Ex. No. 39 at 261; Ex. No. 40 at 271; Ex. No. 41 at 281. *See also Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("protrusion" is something that protrudes. *See* Webster's Third New International Dictionary 1826.") The claim language also provides that "said protruding member extends through said opening of said valve member to block the passage of liquid through said opening." In the context of the `620 patent, therefore, the ordinary meaning of "protruding member" is a member that extends from a surface through the opening of the valve member to block the passage of liquid through the opening. Therefore, in accordance with its ordinary meaning, the "protruding member" has two characteristics: (1) it extends from a surface through the opening of the valve member; and (2) it blocks the passage of liquid through the opening.

3

The specification of the `620 patent confirms that the term "protruding member" should be construed in this manner consistent with its ordinary meaning.  For example, the specification states that, "[f]urther preferably, male sealing or protruding member 108 is a post or pin, such as a frustoconical or conical post, or a finger-like shaped member." `620 Patent, Col. 10, lines 41-43; Consolidated Appendix Ex. No. 2 at 44.  *See also* `620 Patent, Col. 2, lines 4-9;Consolidated Appendix Ex. No. 2 at 40 ("In the preferred embodiment, the protruding member extends through the opening in a male to female relationship such that the orifice sits tightly on the protruding member against the protruding member's bottom portion and the center seal-off or sealing member's base.").  Although these statements in the specification pertain to preferred embodiments and, therefore, do not purport to further limit the scope of the broader claim language, they illustrate that the ordinary meaning of "protruding member" as a member that extends from a surface through the opening of the valve member to block the passage of liquid through the opening is consistent with the written description of the invention.

      **b.**    **Nothing in the Claim Language or Specification of the `931 Patent Indicates that the Protruding Member Must "Plug" the Hole in the Opening in the Flexible Valve Member to Block Fluid Flow through the Valve**

The Defendants have proposed differing and, in some instances, inconsistent constructions of the claim term "protruding member."  The Defendants assert that "[t]he ordinary meaning of the term 'protruding member' is 'to jut out from the surrounding surface or context." *See* Memorandum in Support of Defendants' Motion for Summary Judgment That the Asserted Claims of U.S. Patent No. 6,357,620 Are Invalid ("Defendants' `620 Invalidity MSJ Brief") at 10 (citing MERRIAM-WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1991)).  This definition is not substantially different from the definitions identified by Hakim.  The Defendants also assert that "[t]he `620 patent claims are

4

directed to a valve member having an opening through which a protruding member extends." *Id.* at 1. Once again, this is consistent with the claim language and Hakim's proposed construction. The Defendants further assert that "[t]he flexible valve member and the protruding member cooperate to create a closed position that prevents liquid from flowing through the valve when not desired and an open position that allows liquid to flow." *Id.* This is largely consistent with the claim language and Hakim's proposed construction providing that the protruding member block the passage of liquid through the opening of the valve member (although neither the claim language nor the specification require the flexible valve member and the protruding member to "cooperate").

In the Memorandum in Support of Defendants' Motion for Summary Judgment that the Asserted Claims of U.S. Patent No. 6,357,620 Are Not Infringed ("Defendants' '620 Noninfringement MSJ Brief"), however, the Defendants attempt to inject limitations into the claim term "protruding member" that are not found in the claim language and not mandated by the specification or prosecution history. In particular, the Defendants assert there that "all of the claims of the '620 patent have a valve with a closed position in which a protruding member extends through an opening in a flexible valve member in a male-to-female relationship **to plug** the opening and block fluid flow through the valve." *Id.* at 1 (emphasis added). Nothing in the claim language, however, requires that the protruding member can block the passage of fluid through the opening **only** by "plugging" (*i.e.* filling) the opening, to the exclusion of any other means of blocking the passage of liquid through the opening. As pointed out above, the claim language only requires the protruding member to (1) extend from a surface through the opening of the valve member; and (2) block the passage of liquid through the opening. For example, the specification expressly states that the protruding member can be a "pin." '620 Patent, Col. 10, lines 41-45. There is nothing in the

5

claim language or the specification to prohibit the "head" of a "pin" shaped protruding member from functioning "to block the passage of liquid through said opening."

The Defendants improperly attempt to read the "plug" limitation into the claim language by using figures and written descriptions of preferred embodiments in the specification. For example, the Defendants assert that "the `620 patent describes and claims a valve structure like that shown [] in FIG. 15(f) of the `620 patent. . . ." Defendants' `620 Noninfringement MSJ Brief at 2. This is completely false. The claims define the scope of the `620 patent. The figures depict only preferred embodiments of the invention. *See Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) (noting that "drawings [depicting the preferred embodiment] are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves"). The Defendants further assert that "the 'protruding member' wedges into and plugs the hole in the 'flexible valve member' to prevent liquid from passing through the hole." *Id.* Once again, there is absolutely no claim language nor any statement in the specification to support reading such a limitation into the claims. The Defendants refer to a statement in the specification about a the protruding member and orifice in the valve member forming a "male to female relationship." *Id.* (citing Col. 10, lines 51-55). This language, however, relates to a description of a preferred embodiment and not the entire claimed invention, and does not even suggest that all claims require the protruding member to block the passage of liquid through the opening only by "plugging" the opening.

      **c.**    **There Is No "Clear and Unmistakable" Statement in the Prosecution History of the `620 Patent that the Protruding Member "Plug" the Hole in the Opening in the Flexible Valve Member to Block Fluid Flow through the Valve**

6

The Defendants also attempt to read the "plug" only limitation into the claims by misrepresenting the prosecution history of the `620 patent and falsely asserting that Hakim procured the allowance of the `620 patent only by stating to the PTO that all of the patent's claims require that the protruding member must plug the opening in the valve member as the exclusive mechanism to block the flow of liquid through the opening. Defendants' `620 Noninfringement MSJ Brief at 3-4 ("During prosecution . . . , Hakim asserted to the PTO that his invention was patentable because it claimed a protruding member that passed through **and filled** the hole in the flexible valve member"); Defendants' `620 Invalidity MSJ Brief at 4-5 (same). There is no basis for this assertion. Hakim never made such a statement.

None of the statements during the prosecution history quoted at length by the Defendants state or even suggest that the protruding member must "fill" or "plug the hole" in the valve member to block the passage of liquid through the opening. The Defendants' assertion that Hakim made such statements is simply untrue. The Defendants emphasize the following language in the prosecution history as a basis for their assertion that the protruding member must "fill" or "plug the hole" in the valve member to block the passage of liquid through the opening: "In the closed state, the valve member 126 rests down toward the base of the protruding member, with the protruding member blocking the orifice 118 in the valve member, thereby preventing liquid from flowing through the orifice." Defendants' `620 Noninfringement MSJ Brief at 3. But nothing in this language states that the protruding member must "fill" or "plug" the opening in the valve member. It only requires that the protruding member **block** the opening. The base of the protruding member (e.g. the "head of a "pin" protruding member) can function to block the opening without "filling' or "plugging" the opening.

7

The Defendants also misrepresent the basis for Hakim's distinction of the Belcastro

reference.  Hakim distinguished Belcastro as follows:

> In Belcastro, the protruding member does not extend through an opening in the valve member (diaphragm member 52).[3]  In fact diaphragm member 52 does not have any opening in it.  *See* Figure 10a.

> Furthermore, since there is no opening in Belcastro's diaphragm 52, no liquid can pass through an opening in a diaphragm (a valve member) as required by claim 6.[4]

*   *   *

> In summary, Belcastro does not teach or suggest a diaphragm with a hole or other opening as required by claim 6.

Consolidated Appendix Ex. No. 44 at 324.  *See also id.* at 316, 327-328.  Thus, contrary to the

Defendants' representations to this Court, Hakim's distinction of his invention from Belcastro was

not based upon any assertion that the protruding member created a seal by "extending through and

plugging the hole in the flexible valve member."  Hakim distinguished his invention over Belcastro

on the ground that Belcastro does not teach or suggest a diaphragm or flexible valve member with a

hole or other opening in it.

Also misleading is the Defendants' argument regarding Hakim's May 8, 2001 office action

response.  The Defendants include the following partial quotation from the response: "[i]n the closed

position, the valve member rests low on the post next to the base so that the passage of liquid is

present."  Defendants' `620 Noninfringement MSJ Brief at 4.  The Defendants conveniently omit the

"For example" language at the beginning of the paragraph containing the quoted language, making it

---

[3] The claim language in the `620 patent clearly requires that the protruding member extend through the opening in the valve member.

[4] The "open position" claim language in the `620 patent requires the "passage of liquid through said opening."

8

clear that the statement concerned only an example embodiment, and did not purport to characterize the invention as a whole. Indeed, the specification clarifies that a "post" is merely one form of a protruding member, which can also be, for example, a "pin." Moreover, the quoted language does not support the defendants' argument that, during prosecution of the '620 patent, Hakim limited the scope of his claims to require that the protruding member create a seal only by "extending through and plugging the hole in the flexible valve member." Thus, it is apparent that the Defendants have failed to show a "clear and unmistakable" statement to this effect necessary to overcome the heavy presumption of the ordinary meaning of protruding member as a member that extends from a surface through the opening in the valve member to block the passage of liquid through the opening.

2.    **"Closed Position"**

**Hakim's Proposed Claim Construction: The "closed position" means when the protruding member, extending through the opening, blocks the passage of liquid through the opening.**

a.    **The Claim Language Expressly Defines "Closed Position"**

Claim 1 expressly defines the "closed position" of the valve member. The "closed position" is when the "protruding member extends through said opening of said valve member to block the passage of liquid through said opening."

The specification confirms that the term "closed position" means exactly what the claim language says – when the protruding member extends through said opening of said valve member to block the passage of liquid through the opening in the valve member. For example, the Abstract states that, "[w]hen not in use, the valve sits in a resting, closed position, with the opening in the valve sitting on a protruding member and pressed against the protruding member's base, sealing off the opening in the valve assembly." '620 Patent, Abstract; Consolidated Appendix Ex. No. 2 at 22. The written description of the invention echoes this language, stating that, "when not in use, the

9

valve sits in a resting, closed position, with the opening pressed against the center seal-off, thereby

sealing off the opening, slit or orifice in the valve assembly. Thus, in its relaxed state, with no

negative pressure applied, the valve sits in a closed position with the fluid opening sealed by the

center seal-off." `620 Patent, Col. 1, line 66 to Col. 2, line 4; Consolidated Appendix Ex. No. 2 at

40. Thus, the claim term "closed position" should be construed to mean exactly what the claim

language says it means.

> **b.** **There Is No Support in the Claim Language, Specification or Prosecution History for Defendants Proposed Construction of the Closed Position of the Valve Member as a Condition in which the Protruding Member or "Post" Extends Through and "Plugs" the Opening to "Create a Seal in a Male-to-Female Relationship."**

The Defendants assert that the term "closed position" of the valve member means "a

condition of the claimed valve in which the 'protruding member' or 'post' extends through and plugs

the opening in the valve member to create a seal in a male-to-female relationship." Defendants' `620

Noninfringement MSJ Brief at 8. This proposed definition completely rewrites the claim language,

improperly adding several claim limitations not found in the claim language or mandated by the

specification.

For example, the Defendants' proposed definition improperly injects the term "post" into the

claim's express definition of "closed position" and incorrectly equates the "protruding member" with

a "post." As explained above, the specification clarifies that a "post" is merely one form of a

protruding member, which can also be, for example, a "pin." `620 Patent, Col. 10, lines 41-43;

Consolidated Appendix Ex. No. 2 at 44. It would be error, therefore, to equate "protruding member"

with a "post."

The Defendants' proposed definition also improperly injects the limitation "plugs the

opening" into the claim. As explained above, there is no claim language that requires the protruding

10

member to "plug" or "fill" the opening, and there is no language in the specification requiring this. *See* discussion, *supra*, at 7. The claim language simply requires that the protruding member extend through the opening.

The Defendants' proposed definition also improperly injects the limitation "male-to-female relationship" into the claim. This language does not appear in the claim. Instead, it comes from a description of a preferred embodiment in the specification. *See* `620 Patent, Col. 2, lines 4-9; Consolidated Appendix Ex. No. 2 at 40 ("In the preferred embodiment, the protruding member extends through the opening in a male to female relationship such that the orifice sits tightly on the protruding member against the protruding member's bottom portion and the center seal-off or sealing member's base.") As pointed out in the `931 Claim Construction Brief, particular embodiments appearing in the written description should not be used to limit claim language that has broader effect. *See* `931 Claim Construction Brief at 5. *See also Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.* 340 F.3d 1298, 1308-09 (Fed. Cir. 2003) (Federal Circuit reversed summary judgment of noninfringement on the ground that the district court improperly construed the word "protrusion" by reading into the term limitations from the embodiments of the claimed invention contained in the specification.)

Similarly, the statement in the Defendants' briefs that "[t]he specification further describes the closed position as having the protruding member '**tightly** extending through the orifice and forming a seal against the flow of fluid through the valve," Defendants' `620 Noninfringement MSJ Brief at 9; Defendants' `620 Invalidity MSJ Brief at 11 (emphasis in the originals), also refers to a

11

description of a preferred embodiment involving a "tapered post."[5] The specification makes clear that a tapered post is a preferred configuration, but not a requirement. *See* `620 Patent, Col. 10, lines Col. 10, lines 43-50; Consolidated Appendix Ex. No. 2 at 44 ("**Preferably**, sealing or protruding member 108 is tapered.") (emphasis added); Col. 11, lines 21-25; Consolidated Appendix Ex. No. 2 at 45 ("the valve member **preferably** rests on a tapered protruding member"). Indeed, some claims of the `620 are directed to a protruding member without further limitation (Claims 1-7), others are directed to a protruding member that is a post (Claim 8), others are directed to a protruding member that is conical (Claim 9), and Claim 10 is directed to a protruding member where "at least a portion of said post is tapered." Thus, a tapered post is merely one of several embodiments claimed in the `620 patent, and the language from the specification concerning that one embodiment cannot be used to read a limitation into the claims.

The Defendants argument that the extraneous limitations they seek to have read into the claim are mandated by statements made by Hakim during the prosecution of the `620 patent are the same baseless arguments they made with regard to the term "protruding member" addressed above. For the same reasons, these limitations should not be injected into the claim term "closed position." Thus, the Defendants have failed to demonstrate any basis in the claim language or the intrinsic evidence for requiring the protruding member to "plug" the opening or hole in the valve member.

---

[5] This quoted language comes from the following passage in the specification concerning a preferred embodiment with a "tapered" sealing member: "In accordance with the preferred embodiment of the invention, protruding member 108 is provided opposite female orifice 118, with the protruding member 108 and the orifice 118 in the center seal off forming a male to female mating relationship. In the relaxed state, with no negative pressure applied, center seal off 101 presses against orifice 118, with protruding member 108 tightly extending through the orifice and forming a seal against the flow of fluid through the valve. Due to the mating between the sealing member and the orifice, and due to the tapering of the sealing member with the larger diameter provided at the protruding member's base, the orifice sits snugly against the wider diameter bottom portion of protruding member 108 to form a very tight seal against fluid flow." `620 Patent, Col. 10, lines 51-64; Consolidated Appendix Ex. No. 2 at 44.

3.      "Negative Pressure"[6]

**Hakim's Proposed Claim Construction: "Negative pressure" means pressure below that of surrounding ambient atmospheric pressure.**

      a.      **The Ordinary Meaning of the Term "Negative Pressure" as Understood by One of Ordinary Skill in the Art is Pressure below That of Surrounding Ambient Atmospheric Pressure**

The ordinary meaning of the term "negative pressure," as understood by one of ordinary skill in the art, is pressure below that of surrounding ambient atmospheric pressure. Every dictionary or glossary Hakim could locate defines negative pressure in this manner. *See* Consolidated Appendix Ex. No. 45 at 341-343, 345-351. The specification of the '620 patent confirms that the term "negative pressure" should be given this ordinary meaning. For example, the specification states that "[t]he act of sucking at the cup spout creates negative pressure or a partial vacuum against a valve member near the spout having an opening therein, causing the valve member and opening to move off of a protruding member, thereby unblocking the opening in the valve." '620 Patent, Abstract; Consolidated Appendix Ex. No. 2 at 22. *See also* '620 Patent, Col. 1, lines 56-64; Consolidated Appendix Ex. No. 2 at 40 ("The act of sucking at the spout of the cup creates negative pressure or a partial vacuum against a valve in the cup spout, causing the valve to begin to invert, or turn inside out, thereby unblocking an opening such as an orifice or slit in the valve. In the preferred embodiment, the application of negative pressure to the top of the valve causes an opening in a portion of the valve to move up off of the base of a protruding member extending through that

---

[6]    The claims of the '931 patent – the parent patent to the '620 patent – also uses the term "negative air pressure." It is undisputed that the terms "negative pressure" and "negative air pressure" are used interchangeably. Therefore, the term "negative air pressure" in the '931 patent has the same meaning as the term "negative pressure" in the '620 patent. A court should give claim terms a consistent meaning when used similarly and consistently in other claims. This axiom of construction applies not only to claims in the same patent but to all claims that share a common ancestry, such as the claims of the '931 and '620 patents. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1030-31 (Fed. Cir. 2002).

13

opening.") Thus, the specification equates sucking or creating a partial vacuum – pressure below

that of surrounding ambient atmospheric pressure – with "negative pressure."

The prosecution history of the related `931 patent also confirms that "negative pressure"

means pressure below that of surrounding ambient atmospheric pressure.[7]  In a response to an Office

Action, Hakim described to the PTO how the application of negative air pressure caused the flexible

valve member to lift off the blocking element to allow the passage of liquid through the valve, and

equated negative air pressure with suction:

> When a person drinks from a cup constructed **in accordance with the invention,**
> **suction (negative air pressure)** is applied to the flexible valve material.  This suction
> causes the flexible material to lift off the blocking element, moving the slit off that
> blocking element.

Consolidated Appendix Ex. No. 43 at 300-01.  Thus, the specification of the `620 patent and the

relevant prosecution history confirm that "negative pressure" should be given its ordinary meaning of

pressure below that of surrounding ambient atmospheric pressure.

>    **b.     There is No Intrinsic or Extrinsic Evidence to Support Defendants**
>    **Proposed Construction of "Negative Pressure" as a "Pressure**
>    **Differential"**

The Defendants do not contend that the ordinary meaning of "negative pressure" is different

from what Hakim contends.  Nevertheless, the Defendants, in a transparent attempt to manipulate the

meaning of claim language to facilitate their effort to invalidate asserted claims of the `620 patent,

propose a definition for the term "negative pressure" that does not conform with its ordinary and

customary meaning and which has no intrinsic or extrinsic evidence to support it.

---

[7]  It is appropriate to use the prosecution history of the parent `931 patent to construe the same claim
language used in the the `620 patent.  *Elkay Mfg. Comp. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999)
("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation
in any patent that has issued applies with equal force to subsequently issued patents that contain the same
limitation.").

14

The Defendants assert that the claim term "negative pressure . . . refers to a condition where pressure is lower on one side of the valve relative to the other side of the valve, such as, but not limited to, when a user is sucking on the outlet (spout) side of the valve." Defendants' '620 Invalidity MSJ Brief at 13. The Defendants further contend that "'[n]egative pressure' refers to this pressure differential across the valve." *Id.* The Defendants do not cite any intrinsic or extrinsic evidence to support this claim construction.

The Defendants' proposed definition of "negative pressure" as a "pressure differential" is improper because it defines "negative pressure" as including both internal "overpressure" (i.e. where the internal pressure is above surrounding ambient atmospheric pressure) and external negative pressure (where the external pressure is below surrounding ambient atmospheric pressure) . One kind of pressure is greater than ambient atmospheric pressure (overpressure) and the other is less than ambient atmospheric pressure (negative air pressure). The specification, however, states that "[i]n the preferred embodiment, the **application of negative pressure to the top of the valve** causes an opening in a portion of the valve to move up off of the base of a protruding member extending through that opening." '620 Patent, Col. 1, lines 56-64; Consolidated Appendix Ex. No. 2 at 40. The specification also states that "[i]n this preferred embodiment, when the child or user tilts back the cup to drink therefrom and sucks at the top of the valve, the negative pressure he or she is applying to the top of the valve will open the valve by pulling the valve member containing the opening up and off of the valve and away from the protruding member." '620 Patent, Col. 11, lines 9-14; Consolidated Appendix Ex. No. 2 at 45. If negative pressure could include overpressure, then the valve could not work as described in the preferred embodiment because the application of an overpressure to the top of the valve would force the valve to remain closed. In the context of a no-spill drinking cup, it would require the child to blow into the cup, rather than suck from the cup. The

15

specification consistently refers to negative pressure as suction, and never as overpressure. Thus, all of the intrinsic and extrinsic evidence establishes that "negative pressure" means pressure below that of surrounding ambient atmospheric pressure.

### `620 Patent Claim 6

Claim 6 of the `620 Patent provides as follows:

An apparatus as claimed in claim 1, further comprising a sealing member, said sealing member comprising said protruding member and a **base**, said protruding member being attached to said base.

### 1.    "Base"

### Hakim's Proposed Claim Construction: "Base" Means the Lowest Part or Bottom of the Sealing Member to Which the Protruding Member is Attached and off of Which the Protruding Member Extends

#### a.    The Ordinary Meaning of the Term "Base" as Understood by One of Ordinary Skill in the Art, is the Lowest Part or Bottom of the Sealing Member to Which the Protruding Member Is Attached and off of Which the Protruding Member Extends

The ordinary meaning of the term "base," as used in the context of the claim language and as understood by one of ordinary skill in the art, is the lowest part or bottom of the sealing member to which the protruding member is attached and off of which the protruding member extends. *See* THE NEW OXFORD AMERICAN DICTIONARY (2001) ("1. the lowest part or edge of something"); WEBSTER ILLUSTRATED CONTEMPORARY DICTIONARY – NEW STANDARD ENCYCLOPEDIA EDITION (1982) ("1. the lowest or supporting part of anything; bottom; foundation"); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2nd Ed.) ("1. the bottom support of anything; that on which a thing stands or rests"). Consolidated Appendix Ex. No. 39 at 256; Ex. No. 40 at 267; Ex. No. 41 at 276. The claim language also provides some definition for the term. Claim 6 provides that the protruding

16

member is "attached to said base." Thus, Hakim's proposed construction is consistent with the ordinary meaning of the term and the claim language.

The Defendants definition of "base" is substantially similar, but includes limitations not found in the claim language or for which there is support in the specification or other intrinsic or extrinsic evidence.  The Defendants define "base" as "a surrounding surface out of which the protruding member or post projects."  Defendants' `620 Noninfringement MSJ Brief at 10; Defendants' `620 Invalidity MSJ Brief at 13.  As explained above, the specification clarifies that a "post" is merely one form of a protruding member, which can also be, for example, a "pin." `620 Patent, Col. 10, lines 41-43; Consolidated Appendix Ex. No. 2 at 44.  It would be error, therefore, to equate "protruding member" with a "post."  Also, there is no support in any intrinsic or extrinsic evidence for the inclusion of the word "surrounding" to define base.  No dictionary definitions use that word to define "base," and the specification does not.

## IV. CONCLUSION

Pursuant to the applicable principles of claim construction and the intrinsic evidence, the Court should construe the following claim terms of the `620 patent in the following manner:

The term "protruding member" means a member that extends from a surface through the opening in the valve member to block the passage of liquid through the opening.

The term "closed position" means when the protruding member, extending through the opening, blocks the passage of liquid through the opening.

The term "negative pressure" means pressure below that of surrounding ambient atmospheric pressure.

The word "base" means the lowest part or bottom of the sealing member to which the protruding member is attached and off of which the protruding member extends.

17

Dated: November 5, 2004

Respectfully submitted,


_Michael L DuBos_
Michael L. DuBos (Bar Roll #23944)
The Boles Law Firm
Post Office Box 2065
1818 Avenue of America
Monroe, LA 71207-2065
Telephone: 318.388.4050
Facsimile: 318.361.3394

Eric W. Buether
GODWIN GRUBER, LLP
Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, TX 75270
Telephone: 214.939.4400
Facsimile: 214.760.7332

Morris E. Cohen, Esq.
Law Offices of Morris E. Cohen, Esq.
1122 Coney Island Avenue, Suite 217
Brooklyn, NY 11230
Telephone: 718.859.8009
Facsimile: 718.859.3004

**ATTORNEYS FOR PLAINTIFF NOURI E. HAKIM**

Dated: November 5, 2004

Respectfully submitted,

*Eric W. Buether* ✓/*per TEL*

Michael L. DuBos (Bar Roll #23944)
The Boles Law Firm
Post Office Box 2065
1818 Avenue of America
Monroe, LA 71207-2065
Telephone:  318.388.4050
Facsimile:  318.361.3394

Eric W. Buether
GODWIN GRUBER, LLP
Renaissance Tower
1201 Elm Street, Suite 1700
Dallas, TX 75270
Telephone:  214.939.4400
Facsimile:  214.760.7332

Morris E. Cohen, Esq.
Law Offices of Morris E. Cohen, Esq.
1122 Coney Island Avenue, Suite 217
Brooklyn, NY 11230
Telephone:  718.859.8009
Facsimile:  718.859.3004

**ATTORNEYS FOR PLAINTIFF NOURI E. HAKIM**

## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was served on the following counsel of record via U.S. Mail on this 5th day of November 2004.

Thomas M. Hayes, III (ID No. 06685)
C. Joseph Roberts, III (ID No. 11312)
HAYES, HARKEY, SMITH & CASCIO
2811 Kilpatrick Boulevard
Monroe, Louisiana 71201

Joseph A. Calvaruso (T.A.) (ID No. JC9474)
Tony V. Pezzano (ID No. TP2058)
Kenneth S. Weitzman (ID No. KW8125)
Richard Martinelli (ID No. RM4500)
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, New York 10281-2101



## CERTIFICATE OF SERVICE

I certify that the foregoing pleading was served on the following counsel of record via U.S. Mail on this 5th day of November 2004, by regular mail.

Thomas M. Hayes, III (ID No. 06685)
C. Joseph Roberts, III (ID No. 11312)
HAYES, HARKEY, SMITH & CASCIO
2811 Kilpatrick Boulevard
Monroe, Louisiana 71201

Joseph A. Calvaruso (T.A.) (ID No. JC9474)
Tony V. Pezzano (ID No. TP2058)
Kenneth S. Weitzman (ID No. KW8125)
Richard Martinelli (ID No. RM4500)
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, New York 10281-2101

*Eric W. Buether*