```
                  UNITED STATES DISTRICT COURT

                  WESTERN DISTRICT OF LOUISIANA

                         MONROE DIVISION
```

RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
ALEXANDRIA, LOUISIANA
DATE  2/02/05

NOURI E. HAKIM                         CIVIL ACTION 3-02-1371

VERSUS                                 U.S. DISTRICT JUDGE ROBERT G. JAMES

CANNON AVENT GROUP, PLC,
 et al                                 U.S. MAGISTRATE JUDGE JAMES D. KIRK

                         REPORT AND RECOMMENDATION

Before the court is a motion for summary judgment, **Doc. #88**, filed by defendants Cannon Avent Group, PLC, et al (Avent) as to U.S. Patent No. 6,321,931 ('931 patent) belonging to plaintiff, Nouri E. Hakim (Hakim). The motion seeks a ruling that the claims of the '931 patent are not infringed, or, in the alternative, are invalid as having been the subject of previous patents.

Hakim sued defendants for patent infringement claiming to be the inventor of "technology" related to children's no-spill drinking cups. Hakim claims that on November 27, 2001 he was awarded the '931 patent. Another patent was also awarded in regard to the no-spill drinking cups, Patent No. 6,357,620, which is the subject of motions for summary judgment, Docs. # 89 and 90 in this case. Separate Reports and Recommendations are issued this date regarding those motions.

Defendants denied the allegations of the complaint and filed

a counterclaim against Hakim asserting the invalidity of both patents on the basis of prior use of the invention, its having been the subject of prior patents, 35 U.S.C. 102, that it was obvious, 35 U.S.C. 103, and that it failed to contain an adequate specification, 35 U.S.C. 112.

### The law of Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates that a summary judgment:

> "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, [submitted concerning the motion for summary judgment], if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be

entered against the adverse party."

Local Rule 56.2W also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

A party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett,</u> 106 S.Ct. 2548 at 2552; <u>International Ass'n. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., Inc.</u>, 812 F.2d 219, 222 (5th Cir. 1987). However, movant need not negate the elements of the non-movant's case. <u>Little v. Liquid Air Corporation</u>, 37 F.3d 1069, (5th Cir. 1994). Once this burden has been met, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." <u>Izen v. Catalina</u> 382 F.3d 566 (5th Cir. 2004); Fed. R. Civ. P. 56(e). All evidence must be considered, but the court does not make credibility determinations. If the movant fails to meet its initial burden, summary judgment should be denied. <u>Little</u>, 37 F.3d at 1075.

However, the non-movant, to avoid summary judgment as to an issue on which it would bear the burden of proof at trial, may not rest on the allegations of its pleadings but must come forward with proper summary judgment evidence sufficient to sustain a verdict in its favor on that issue. <u>Austin v. Will-Burt Company</u>, 361 F. 3d 862 (5th Cir. 2004). This burden is not satisfied with "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. <u>Little</u>, id.

Summary judgment is as appropriate in a patent case as it is in any other case. <u>Desper Products, Inc. v. QSound Labs, Inc.</u>, 157 F.3d 1325, 1332 (Fed. Cir 1998). Thus, Avent is entitled to summary judgment of no infringement only if the facts and inferences, when viewed in the light most favorable to Hakim would not persuade a reasonable jury to return a verdict in favor of Hakim, the non-moving party.

<u>Procedure for Analyzing a Patent Claim</u>

A court determines patent infringement by construing the claims and then applying that construction to the accused process or product. <u>Business Objects, S. A. v. Microstrategy, Inc.</u> 2005 WL 22893 (Fed. Cir.), <u>Markman v. Westview Instruments, Inc.</u>, 52 F. 3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 116 S. Ct. 1384 (1996). Claim construction is a question of law for the court. <u>Markman</u>, 116 S. Ct. 1384. In determining the meaning of disputed patent claim

4

language, the court looks first to the intrinsic evidence of record examining, in order, the claim language itself, the specification, and the prosecution history. <u>Alza Corporation, et al v. Mylan Laboratories inc., et al</u>, 391 F.3d 1365 (Fed. Cir. 2004). "Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language." <u>Vitronics Corp. v. Concepronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Extrinsic evidence (e.g. reference books, expert testimony, etc.) may only be considered to enhance the court's understanding of the technology. <u>EMI Group N. Am., Inc. v. Intel Corp.</u>, 157 F.3d 887, 892 (Fed. Cir. 1998). Extrinsic evidence may not be used to contradict the intrinsic evidence. <u>Mantech Envtl. Corp., v. Hudson Envtl. Servs., Inc.</u>, 152 F.3d 1368, 1373 (Fed. Cir. 1998).

Claim terms are generally given their ordinary meaning. <u>Vitronics</u>, 90 F. 3d at 1532. Accordingly, a technical term used in a patent is interpreted as having the meaning a person "experienced in the field of the invention" would understand it to have. <u>Hoechst Celanese Corp. v. BP Chem. Ltd.</u>, 78 F. 3d 1575, 1578 (Fed. Cir. 1996). A patentee may, however, act as his own lexicographer and may define a claim term differently from its ordinary meaning. Id.

A fundamental precept in claim construction jurisprudence requires construing the meaning of a claim to avoid recapture of interpretations disclaimed during prosecution of the claim before the patent office. <u>Omega Engineering, Inc. v. Raytek Corp.</u>, 334 F.

5

3d 1314, 1323 (Fed. Cir. 2003), Southwall Technologies., Inc. v. Cardinal IG Co., 54 F. 3d 1570, 1576 (Fed Cir. 1995). The disclaimer, however must be effected with "reasonable clarity and deliberateness", Springs Window Fashions LP v. Novo Industries., LP, 323 F. 3d 989. 994 (Fed Cir. 2003), that is, it must be both "clear and unmistakable", Omega Engineering, Inc., 334 F.3d at 1325-6. Construing a patent consistent with arguments made during its prosecution supports the public notice function of the patent record; a patentee is, therefore, held to the particular claim construction argued during patent prosecution to preserve public reliance on statements made in the public record. Springs Window Fashions LP, 323 F.3d at 995.

## Analysis

Plaintiff originally claimed violation of claim numbers 3,4,8,9-14,18,20,21,23, and 26. However, plaintiff advised the court that he wished to pursue a violation only of claims 3,4,9,10,13, and 14. Doc. #95. Only claims 3 and 8 are "independent claims"; the rest are dependent claims, that is, they contain "a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 U.S.C. 112.

The no-spill drinking cup apparatus described in the '931 patent and Avent's allegedly infringing product both seek to provide a method by which a small child can obtain a liquid drink by sucking on the spout of the bottle top, but when no suction is

applied, the spout is blocked so that no liquid, or at least little liquid, can escape. Both products accomplish this by use of a simple valve which includes a diaphragm made of a flexible material such as silicone.

Avent asserts that its valve does not infringe because Hakim's patent covers a valve having two separate liquid blocking mechanisms. In support of its argument, Avent relies on the prosecution history of the patent. The court agrees that the issue of infringement in this case cannot be resolved solely by review of the claims and the specifications and that the prosecution history must also be considered. Those claims and specifications suggest only a flexible valve diaphragm which, in its resting position, seats against a "blocking element" so that liquid cannot escape but, when suction is applied, lifts away from the blocking element creating a space through which liquid can flow.

The prosecution history shows that after the patent was applied for by Hakim, it was denied on January 27, 2000 by the patent office, pursuant to 35 U.S.C. 102, which provides, in pertinent part:

> A person shall be entitled to a patent unless-
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent, or

7

> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

Specifically, the patent office stated that the claims were rejected "as being clearly anticipated by Robbins III et al, Bachman et al or Belcastro. See Defendant's Exhibit 4. The three names refer to prior patents.

In response to the rejection, Hakim filed an "Amendment and Response", Defendants's Exhibit 5, in which he changed certain language in some of the claims and referred in some of the changes to the opening in the flexible valve material as being a "slit". In the "remarks" section of the Amendment and Response Hakim sought to distinguish the Robbins III, Bachman, and Belcastro inventions.

Importantly, Hakim went to great lengths to distinguish his invention emphasizing that his invention utilizes "two separate mechanisms" to close off the passage of liquid through the valve, not just one as the prior patented inventions had used. He stated:

"This suction causes the flexible material to lift off of the blocking element, moving the slit off of that blocking element. **In addition**, since the valve material is flexible, **the flexing of the material will also stretch the slit**, facilitating the passage of liquid through the valve." (Emphasis added).

"Thus **two separate mechanisms** are both used to close off the

8

passage of liquid through the valve when not in use. The **first** mechanism involves an inverting, flexible valve material which has a **slit** therein and responds to suction. The **second** mechanism involves the use of a **blocking element**, which is impenetrable to the passage of liquid. The slit sits against the blocking element, sealing or blocking off the slit, to yet **further** prevent the passage of liquid through the valve."(Emphasis added).

Hakim further argued "[b]y providing **both** the elastomeric member with a slit **and** a blocking element, a sealing mechanism is provided which reduces spillage **beyond that of either mechanism alone**. None of the references cited in the Office Action {Robbins III, Bachman, and Belcastro} teach or suggest such a no-spill mechanism having a slit sitting against a blocking element **such as is recited in all of the pending claims**."(Emphasis added).

He further stated "Robbins, however does not teach or suggest the use of a separate, **additional** closing element for the slit to rest against."(Emphasis added).

The prosecution history makes perfectly clear that Hakim specifically distinguished his invention from the prior art by limiting it to an apparatus with both (1) a slit which closes when suction is not applied, and (2) a second closure consisting of a blocking element which the slit rests against.

9

After plaintiff's explanation, a Notice of Allowance was issued by the patent office on December 22, 2000. However, on March 21, 2001 Hakim amended the application for the patent by changing "slit" to "opening" in claims 1 and 2, which Hakim said broadened the claims. See Defendant's Exhibit 7. No new patentability arguments were presented. The '931 patent was issued. However, Hakim's amendment to add "opening" instead of "slit" did not change the requirement of his patent that the device have *two* mechanisms to stop the flow of liquid. Because Hakim did not retract any of his arguments distinguishing the prior art, he is held to the restrictive claim construction he argued during prosecution of the patent. Springs Window, 323 F.3d at 995.

The Avent valve utilizes only one and not two mechanisms for blocking the liquid. It, like the Hakim valve, contains a flexible diaphragm with a hole in it which diaphragm, when at rest, seats itself against a "blocking element" thus sealing off the liquid. However, the Avent valve does not have *two* mechanisms for sealing

off the liquid, but only one.

In asserting that the Avent valve infringes plaintiff's patent, Hakim suggests that it is necessary for the court to interpret the term "opening" in the claims. Hakim further suggests that Avent is claiming that Hakim's patent requires a "slit". Avent denies that it is claiming the Hakim patent requires a slit.

It is not necessary for the court to interpret "opening" or determine whether the Hakim patent requires there to be a "slit" because it is clear that what the Hakim invention and patent does require is two separate mechanisms to close off the liquid: First, a flexible diaphragm with an opening which stretches open when suctin is applied but is closed when not stretched, and second, a blocking element against which the opening in the diaphragm rests.[1]

Hakim also urges the court to interpret the term "closed position". However, interpretation of that term is not necessary to the construction of the claims because, regardless of the meaning, the "Amendment and Response" makes perfectly clear that two mechanisms are required, as described above. The term "closed position" is used by Hakim both in the patent claims and in his

---

[1] While there is much discussion in brief by the parties about whether any "opening" other than a "slit" would accomplish the result envisioned by the patent, the court need not decide that question, for whatever kind of opening is created, it must be self-sealing based on Hakim's statements made in prosecuting the patent. For example, a T-shaped opening, an X shaped opening, or a plus sign shaped opening would work (that is they would open when stretched and close when at rest): whether those are considered "slits" or just "openings" is beside the point.

"Amendment and Response". The term was used in its ordinary meaning but in two different contexts, and not as a term of art. Vitronics 90 F.3d at 1532. According to the clear and unmistakable language used by Hakim in the "Amendment and Response" the patent requires "flexible" or "elastomeric" valve material which, when flexed, will "stretch the slit [or opening or orifice or hole]". In its resting position, **the slit is not being stretched and is in a closed position.**" Clearly, the term "closed position" here means that the slit is not stretched into an open position. Otherwise, this would not constitute a second mechanism for stopping the flow of liquid. Equally clear is the meaning as used in the claims, where it is stated in claim 3, for example, that the valve has a closed position and an open position where the "valve member sits against a blocking element with said opening against said blocking element when in said closed position **such that said blocking element blocks** the passage of fluid...." (Emphasis added). It is obvious that, when at rest, both mechanisms are in their closed position, that is, the slit is not stretched open and the slit is "sealed" against the blocking element.

Hakim's arguments, through counsel, are at best disingenuous, for he clearly stated in prosecution of the patent: "In addition, since the valve material is flexible, the flexing of the material will **also** stretch the slit, facilitating the passage of liquid through the valve." Further, counsel's suggestion that the

12

prosecution language merely "mentions" two mechanisms and that the two mechanisms are (1) the flexible valve material and (2) the blocking element is equally specious. For Hakim made clear in the prosecution language at p. 7, in order to obtain the patent, that the two mechanisms are (1) the slit in the flexible valve material which, when suction is applied, opens to allow the flow of liquid, and (2) the seating of the slit against the blocking element. Hakim's statements were clear and were deliberate, having been made specifically to convince the patent office to grant the patent after it had initially been denied. The impossibility of counsel's argument is further shown by Hakim's statement that "[b]y providing **both** the elastomeric member with a slit **and** a blocking element, a sealing mechanism is provided which reduces spillage **beyond that of either mechanism alone.**" If the "blocking element" is, as counsel suggests, one of the two mechanisms, how could it "alone" possibly stop the flow of liquid?

Now that the scope of the claims has been determined, it is necessary to determine whether the Avent valve infringes those claims. I find by clear and convincing evidence that the Avent product does not infringe Hakim patent '931. The simple fact is that, unlike Hakim's patent, the Avent product does not contain two mechanisms <u>of any kind</u> to stop the flow of liquid. Rather, the Avent product uses a basic design which, although modified, has been well known since at least as early as 1959. See discussion

13

below. Further, the diaphragm in Avent's valve does not independently block fluid flow. The only blocking mechanism in the Avent valve is the action of the diaphragm sitting against the blocking element and "sealing" off the flow of liquid.

### Otherwise the Hakim Patent is Invalid

Were the court not to construe the patent in this manner, then the invalidity of the Hakim patent '931 is assured. For Hakim's patent would be no more than a duplication of the prior art, which is why it was rejected by the patent office in the first place. The concept of a flexible diaphragm with a hole[2] in it which rests against a blocking element to shut off the flow of liquid when pressure (sucking) is not applied, has been known since at least 1959 and is the subject of at least four patents. 35 U.S.C. 102(b). The first is the EP '828 European patent, the second is the IT '286 Italian patent, the third is the Robbins III U. S. patent, copies of which appear at Defendants' Exhibits 2, 3, and 15, respectively, and the fourth is the Belcastro patent cited by the patent office in its initial denial of the patent which appears at Def's Exh. 5 filed in connection with the Motion for Summary Judgment regarding the '620 patent, Doc. #89. Whether the patent also offends the Bachman patent cited by the patent office, is unknown; a copy of that patent does not appear of record. Had Hakim not differentiated his invention by insisting that it involved two

---

[2] Call it what you want.

mechanisms, not just one, he would have had no patent at all. However, because the '931 patent requires two mechanisms, it is not necessary to find the Hakim '931 patent invalid as being no invention and anticipated by the prior art.

### The Extrinsic Evidence

Certain extrinsic evidence has been filed by both parties in connection with this motion. That evidence consists of the affidavit of Mr. Hakim and copies of depositions, including expert deposition testimony. However, I find that consideration of the extrinsic evidence is not necessary in this case. The "technology" involved in the devices at issue is extremely simple and expert testimony is not needed to assist the court in understanding the products or the claims. EMI Group N. Am., 157 F.3d 892.

### Summary

Therefore, I find that there exists no genuine issue of material fact and that Avent is entitled to judgment as a matter of law that the Avent patent does not infringe any of the claims 3,4,8,9,10,11,12,13,14,18,20,21,23,or 26[3] of the Hakim '931 patent.

For the foregoing reasons, IT IS RECOMMENDED that Defendant, Avent's, Motion for Summary Judgment, Doc. # 88, be GRANTED and that plaintiff's claims as to the '931 patent be dismissed with prejudice.

---

[3] None of these claims have been dismissed by the court and are now before the court for consideration on this motion. Judicial efficiency requires that all of the claims in the patent be considered now.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 2rd day of February, 2005.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE